**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANGELA M. LEONARD, Personal
Representative of the Estate of Roy F.
Leonard; AETNA MORTGAGE
CONSULTANTS, INC., a Delaware
corporation,

        Plaintiffs-Appellees,

v.

SUNSET MORTGAGE,
a Pennsylvania limited partnership,

        Defendant-Appellant.

Nos. 04-4310 & 05-4116
(D.C. No. 1:03-CV-92-J)
(D. Utah)

---

**ORDER AND JUDGMENT***

---

Before **HENRY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

Plaintiffs Angela M. Leonard, as personal representative for the estate of

her deceased husband, Roy F. Leonard, and Aetna Mortgage Consultants, Inc., the

couple's wholly-owned mortgage corporation, (Leonard Parties) sued defendant

---

* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Sunset Mortgage for breach of contract, alleging that Sunset Mortgage owed

Mr. Leonard unpaid commissions. Upon consideration of cross-motions for

summary judgment, the district court granted the Leonard Parties' motion,

holding that Sunset Mortgage owed the Leonard Parties the unpaid commissions,

and denied Sunset Mortgage's motion for summary judgment. Sunset Mortgage

appealed.[1] (Appeal No. 04-4310.) It also appealed the district court's order

granting attorney's fees to the Leonard Parties. (Appeal No. 05-4116.) We

reverse both decisions and remand for further proceedings.

## I. Background

Mr. Leonard, doing business as Aetna Mortgage Consultants, worked as

marketing director, an independent contractor position, for Sunset Mortgage

recruiting persons to establish Sunset Mortgage branch offices. Mr. Leonard's

and Sunset Mortgage's duties and obligations were set forth in an Independent

Contractor Agreement (Agreement). Under the terms of that Agreement,

Mr. Leonard received commissions based on the productivity of the branches.

The Agreement set forth provisions for terminating the Agreement with or

---

[1] The district court denied the Leonard Parties' claim for death benefits. By failing to file a cross-appeal, the Leonard Parties have not preserved that claim. *See Montgomery v. City of Ardmore*, 365 F.3d 926, 944 (10th Cir. 2004) (requiring cross-appeal where appellee seeks to enlarge own rights or lessen rights of adversary); *Trigalet v. Young*, 54 F.3d 645, 647 n.3 (10th Cir. 1995) (noting that where plaintiffs did not cross-appeal on issue, this court lacked jurisdiction to consider district court's grant of summary judgment to defendants on that issue).

without cause. Aplt. App. at 80-81. If Sunset Mortgage terminated without cause, it was obligated to pay Mr. Leonard commissions for twelve months. If it terminated with cause, "all compensation . . . terminate[d] and cease[d] to accrue." *Id.* at 81. The Agreement defined "cause" to include "willful violation of any Sunset policy." *Id.* Also, the Agreement set forth confidentiality provisions:

> It is understood and agreed by [Leonard], as a condition of the payment of fees to [Leonard], that the nature of Sunset's business . . . require[s] confidentiality be maintained throughout the process, and therefore, [Leonard] agrees as follows:
>
> (a) [Leonard] understands and agrees that all conversations, records, correspondence, files, customer and supplier lists, data and other information pertaining to or concerning Sunset, its affiliates, and their customers and suppliers are confidential information, and therefore, during the term of this agreement and for a period of two (2) years thereafter, [Leonard] shall not divulge or communicate any such confidential information to any person or organization without the express written authorization of Sunset. [Leonard] agrees that, upon the termination of this agreement, he/she will immediately surrender to Sunset any and all files, memoranda, forms, customer and supplier lists, other business service data and everything in his/her possession pertaining to Sunset and/or its affiliates and their businesses, it being distinctly understood that all such lists, books and records and any copies thereof, whether prepared by [Leonard] or by others, are the property of Sunset;
>
> (b) [Leonard] shall disclose information to those persons who have a need to receive information and that such disclosure shall be limited to only so much of the information as is necessary for the performance of [Leonard's] services; and
>
> (c) Disclosure of any such confidential information shall require the express written consent of Sunset.

*Id.* at 84-85.

In July 2002, Sunset Mortgage exercised its right to terminate the Agreement without cause. By doing so, it was obligated under the Agreement to pay Mr. Leonard commissions for twelve months after termination. After making six payments, Sunset Mortgage determined that Mr. Leonard had violated the confidentiality provisions and breached the Agreement by maintaining a website under the domain name www.sunsetmortage.biz, which disseminated allegedly confidential proprietary information both before and after termination of the Agreement. On January 31, 2003, Sunset Mortgage sent a letter to Mr. Leonard, who had passed away on January 19, stating that it had suspended any of its requirements under the Agreement and that he should "cease and desist" disseminating its proprietary information through the website within ten days. *Id.* at 125.

After Sunset Mortgage denied the Leonard Parties' requests for the remaining six commission payments, they brought suit in Utah state court alleging that Sunset Mortgage breached the Agreement when it failed to make the remaining six payments. Sunset Mortgage removed the case to federal court based on diversity jurisdiction and defended, in part and as relevant now, on the ground that Mr. Leonard did not perform all of his obligations under the Agreement and had materially breached the confidentiality provision of the Agreement. The parties filed cross-motions for summary judgment. The district

-4-

court granted the Leonard Parties' motion for summary judgment, directing that Sunset Mortgage make the six remaining payments, totaling $77,088.43, plus pre- and post-judgment interest and costs. The court denied Sunset Mortgage's motion for summary judgment. Sunset Mortgage appealed. (Appeal No. 04-4310.)

Thereafter, the Leonard Parties filed a motion for attorney's fees. The district court granted the motion in the amount of $39,620.00. Sunset Mortgage again appealed. (Appeal No. 05-4116.)

## II. Appeal No. 04-4310

### A. Standard of Review

We review the district court's grant or denial of summary judgment de novo, applying the same legal standard that the district court applied. *Montero v. Meyer*, 13 F.3d 1444, 1446 (10th Cir. 1994). Under that standard, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way and is 'material' when it is essential to the proper disposition of the claim." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (quotation omitted), *petition for cert. filed*, 75 U.S.L.W. 3266 (U.S. Nov. 3, 2006)

(No. 06-638). "On an appeal from cross-motions for summary judgment, we construe all factual inferences in favor of the party against whom summary judgment was obtained." *NISH v. Rumsfeld*, 348 F.3d 1263, 1266 (10th Cir. 2003).

Although federal law controls our review of whether the district court properly granted the Leonard Parties' motion for summary judgment, Pennsylvania law, the law designated by the Agreement, governs the analysis of the substantive breach-of-contract claims. *See Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989) (applying Oklahoma substantive law, consistent with contracts' choice-of-law provisions).

## B. Analysis

Sunset Mortgage argues that the district court erred in denying its motion for summary judgment and in granting the Leonard Parties' motion for summary judgment because Mr. Leonard breached the Agreement by publishing Sunset Mortgage's confidential information on an unauthorized website bearing its trade name. It contends that the Leonard Parties did not prove that Mr. Leonard performed his obligations under the Agreement, that Mr. Leonard's right to receive compensation was conditioned upon his compliance with the confidentiality provisions, and that Mr. Leonard's breach was material.

There are genuine issues of material fact whether Mr. Leonard actually breached the confidentiality provisions of the Agreement by publishing

confidential information concerning Sunset Mortgage on the website. Sunset

Mortgage maintains that it first learned of the website in January 2003, after it

had made six commission payments. To support this assertion, Sunset Mortgage

relies on the declaration of its President and Chief Operating Officer, Samuel B.

Morelli. In that declaration, Mr. Morelli first stated that he was "familiar with

the 'sunsetmortage.biz' web site that was once used by Mr. Leonard during the

life of the Agreement and which [Mr. Leonard] continued to use, without

authorization, after the Agreement was terminated." Aplt. App. at 121.

According to Mr. Morelli, the website published the following confidential

information: a list of branches, a sample branch manager agreement, Sunset

Mortgage's application to become a branch manager, and compensation

information for branch managers. *Id.* Mr. Morelli further stated that there was no

written authorization to disseminate this information, as was required by the

Agreement. *Id.* at 121-22. Mr. Morelli also stated that upon learning

> that Mr. Leonard, Mrs. Leonard and/or AETNA were publishing vast
> amounts of Sunset's confidential information via the web site, Sunset
> demanded that they immediately cease and desist from any and all
> dissemination of such confidential information. This demand was
> made by letter on January 31, 2003. This letter noted that
> Mr. Leonard was in direct violation of the Agreement and that
> because of the violations, Sunset was suspending any and all of its
> requirements under the Agreement, thus terminating the Agreement
> for cause.

*Id.* at 122; *see also id.* at 125 (letter of January 31, 2003, directing Mr. Leonard to

cease and desist disseminating information and using Sunset Mortgage trade name

within ten days, notifying him Agreement had been violated thereby causing Sunset Mortgage harm, and suspending Sunset Mortgage's requirements under Agreement).[2]

The Leonard Parties counter that Sunset Mortgage was aware of the website earlier than Mr. Morelli's declaration suggests. Ms. Leonard testified at her deposition that she did not remember showing the website to anyone at Sunset Mortgage or asking anyone at Sunset Mortgage to look at the website, but she thought that she told someone at Sunset Mortgage that there was a website or that she was working on one. *Id.* at 94. Based on this testimony, the Leonard Parties contend that Sunset Mortgage knew of the website and did nothing about it, and the website was either authorized or the information on the website was not confidential or proprietary.

When Sunset Mortgage learned about the website and whether it acquiesced in its existence are questions of fact appropriate for a jury to decide. We cannot say that the underlying facts are undisputed or that we can hold as a matter of law that Mr. Leonard breached the contract. Instead, we conclude that there is a genuine question of fact whether Mr. Leonard breached the Agreement and, if so,

---

[2] On summary judgment, Sunset Mortgage did not provide copies of the pages of the website to prove what was on the website or if the website contained confidential information. *See* Aplt. App. at 323 (admission by Sunset Mortgage's attorney that it did not have copy of website). It provided only the declaration of Mr. Morelli.

whether Sunset Mortgage had a duty to continue to make the final six commission payments.[3]  Accordingly, we conclude that the district court erred in granting summary judgment in favor of the Leonard Parties.  Correspondingly, the district court properly denied Sunset Mortgage's summary judgment motion.

### III.  Appeal No. 05-4116

Sunset Mortgage also appeals the district court's award of attorney's fees to the Leonard Parties.  Because we reverse the district court's decision in favor of the Leonard Parties, we must also reverse the district court's award of attorney's fees to them.

### IV.  Conclusion

The district court's judgment and its order granting attorney's fees are REVERSED, and the case is REMANDED for further proceedings.

Entered for the Court

Michael R. Murphy
Circuit Judge

---

[3]    If a factfinder finds that Mr. Leonard breached the Agreement, that factfinder must also decide whether that breach was material.  *See Forest City Grant Liberty Assocs. v. Genro II, Inc.*, 652 A.2d 948, 951 (Pa. Super. Ct. 1995) (recognizing that materiality of breach is question of fact).